24-24-22 Maria Jose Pizarro v. Santiago Quezada et al. We invite counsel to take their place near the podium. No rush, we're good. Mr. Bacon, I understand you would like to reserve two minutes for rebuttal. Is that right? Whenever you're settled, we're ready for you. The central issue on appeal is whether the jury's $1.725 million compensatory damage awards against the two defendants were excessive as a matter of law and should be subject to remititor or, in the alternative, new trial on damages, in light of the course of sexist conduct and the single act of attempted sexual assault, plaintiff attributed to Mr. Quezada during her testimony, and plaintiff's failure to introduce any medical records, medical testimony, or lay testimony to corroborate the symptoms of emotional distress and medical treatment that she described through her testimony. Defendants contend the question should be answered in the affirmative, in light of the trial court's mischaracterization of plaintiff's emotional distress claims as egregious rather than garden variety or significant. Defendants maintain that the plaintiff's failure to introduce any corroborating medical evidence or lay testimony in support of her compensatory damage claims under Title VII of the New York State Human Rights Law The argument is that this was garden variety emotional distress? I'm not asking a question, but the evidence presented to the jury showed that the harassment went on for eight years, that at some point she attempted suicide, she was seeing a psychiatrist, she was taking antidepressants, she was indeed seeing a psychiatrist. Are those earmarks of garden variety emotional distress? Your Honor, I think they're earmarks of significant emotional distress, and I know we argued in the brief that these are garden variety claims, based really primarily on the fact that there was no corroborating medical testimony, no medical documentation, no testimony by the clinicians at that center. It wasn't a psychiatrist. I believe it was clinicians at the clinical center that she was at. She didn't have her sister testify. So let's just take the attempted suicide. And I understand in lots of cases there is evidence from medical professionals, say, corroborating something. But usually we say that a jury is entitled to be the finder of fact, right? So was it raining that day, was it not raining that day? And if they say it's raining, we don't say, well, it was only kind of raining on appeal because there wasn't corroboration. It's just a yes or no question. So take, for example, the question, did she attempt suicide? You would have had fodder for cross-examination for argument. The jury said, no, you can't believe that without corroboration. But the jury was entitled to conclude that it happened, right, to just take a witness, a single witness's testimony, and say, we believe the witness. So I believe, and let's just do that, believe that this was so serious it drove this particular victim to attempt suicide once. The jury is allowed to make that factual finding, right? I think the jury is allowed to make that factual finding. So when you have that, so take that fact alone and tell us how that's merely significant that someone tries to kill themselves, that that's how despondent they are. Talk about that fact alone because that's maybe one of your hardest facts. No, it is a hard fact. I do acknowledge that, and it is one of the premier facts with respect to emotional distress. I think the problem that the defendants had was that by not calling any of the medical people, by not putting in any of the medical testimony, they effectively shielded the plaintiff from any effective cross-examination on emotional distress. If there's a wild cross-examination, your testimony is wholly uncorroborated, ma'am. I mean, I would think it's usually one side's dream. I have a witness, and it's just an ipsedixit, no corroboration. That's usually what a lawyer loves to see their opponent put up as a single uncorroborated witness. It's not in this view. We maintain that there was no corroboration for the allegation, whether we brought that on on cross-examination. I think it's more of a question of law than a question of fact as to the upper threshold. Did you get the medical records in discovery? I don't believe we got medical records in discovery. Did you ask for them in discovery? I was not the. I'm trying to ask a question, and you're talking over me. Did the defendants ask for medical records during discovery? I believe the defendants asked for medical records, did not obtain them. There were numerous discovery disputes, which my colleague can speak to better than I can because he was trial counsel. Did your clients compel discovery of medical records, seek in-camera review of medical records? I don't know if they made a motion to compel. I know there were numerous disputes about various discovery issues. But there is a quandary here. If the defendants were to put in the medical records, then they would be helping plaintiff demonstrate significant emotional distress supported by adequate corroboration. Well, that would suggest they were reviewed and there was corroboration. So, you know, you can still have them to understand, right? And if the medical records came in and said, the patient presented with a toothache, not the patient presented depressed and suicidal because of what's going on at work, that's the whole reason why you compel the records, to determine whether she went to the hospital with a toothache or suicidal. I agree. And if I was the trial counsel and I had those records, that's exactly what I would do. Well, maybe your client has a great ineffective legal malpractice claim, but the point is your client had a trial and that this should have been presented at trial. I'm sure it was argued that there were no medical records and the jury chose to believe the plaintiff. In fact, I believe the trial judge noted that she was subjected to significant cross-examination over a day and that in the trial judge's assessment, her credibility was on a sale. The trial judge also helped sculpt the evidence that came in. The trial judge bifurcated the counterclaim, which was a big part of the defense, which would have been used to attack the credibility. The trial judge gave the plaintiff a lot of leeway to testify about her medical treatment, the causes of the medical treatment. He said, you're not allowed to say what you were told by your practitioners, but then he let her go ahead and say it anyway. And at the same time, the trial judge circumscribed defense counsel. We did argue that there were a number of clearly erroneous evidentiary rulings. I think the better argument on appeal is that as a purely matter of law, if a plaintiff simply testifies about emotional distress, a nearly $2 million damage award, unsupported by any corroboration by lay, there was no lay corroboration or clinical medical corroboration, is excessive as a matter of law. The only evidentiary rulings that you challenge on appeal, as I understand, were the court not allowing e-mails, purported e-mails, between the plaintiff and a coworker. But the court, I read that transcript, the court allowed, the trial judge allowed counsel to inquire about the substance of those e-mails and how they referred to each other, the nature of their relationship. Didn't allow the document in because there wasn't sufficient authentication of it because she testified that her e-mail had been hacked and that was no longer her e-mail or she didn't use it anymore and she didn't recognize the e-mails. Counsel never asked the coworker when he was on the stand, didn't call him back to try to authenticate him as the recipient. And again, that may have been the fault of trial counsel, but that's the only evidentiary issue that I see on appeal. No other evidentiary claims. Is that correct? We did note that the judge on at least seven occasions admonished the defense lawyer to blunt the questions and save it for summation. So it was part of a context where the judge was being very lenient with the plaintiff. I understand that. But the only evidentiary ruling that you're challenging on appeal is the not admitting to e-mails between the plaintiff and a coworker. Yes. Correct? Yes, and we maintain that the judge prevented sufficient authentication by not allowing any sort of probing inquiry about the nature of the e-mails to demonstrate circumstantial evidence that would have proved the e-mails were exchanged by the plaintiff and her the only witness to the alleged assault in the case. Okay. You've reserved two minutes for rebuttal, even though we kept you up a little longer. You've still got two minutes in the bank. Thank you. Why don't we hear from counsel for the appellee. Is it Brewstein? Brewstein, Your Honor. Brewstein. Mr. Brewstein. Good morning, Your Honors. May it please the Court. My name is Evan Brewstein, and I represent Ms. Pizarro, the appellee in this case. This is a very serious case involving not, as counsel described it, as a single sexual assault and sexist remarks, but an almost decade course of conduct of repeated sexual assaults where my client was subjected to her breasts and buttocks being repeatedly grabbed by the owner and her supervisor, Mr. Quezada, that she repeatedly pushed back and tried to get him to stop these things, culminating in but for the fact that there was a person in the locked room walking in while she was having her clothes ripped down, her underwear ripped down, and having Mr. Quezada's penis pressed up against her bare bottom. But for that individual stopping that sexual assault, that attempted rape, it would have been much worse. But to suggest that this was a single sexual assault, to suggest that this might even be considered garden variety or significant, I think is a complete misconstruing of the facts, and I think that the jury got it correct. I believe that despite the way counsel wishes to describe this incident, the jury heard the testimony not just from Ms. Pizarro, but from the other witnesses that corroborated it. So I think it's clear that the only question that they're raising on appeal is the remitted rank. Yes, Your Honor. Why don't you talk about other comparable cases? Because I think that's sort of where the game is, I think, on appeal, is whether the amount of damages that were awarded to your client are, you know, how out of sync, wildly out of sync, whatever the standard you can describe for us, with other cases with comparable facts, that this is completely out of proportion to what other juries are giving other similarly situated plaintiffs who have been subjected to similar kinds of conduct. Why don't you address that? Certainly, Your Honor. And my point in laying out those facts is because I don't believe that there's necessarily such comparable facts. We have to operate by analogy. No two cases are alike. So do your best. Absolutely, Your Honor. By giving us what you think are some of the more analogous cases and why. So one of those cases, Your Honor, would be Carroll v. Trump, where there was a finding by the jury to digital penetration on a single instance. In that case, the court awarded $2 million in compensatory damages. In that case, there was no testimony regarding any suicide attempt. It was limited to a single incident. Obviously, you know, digital penetration is a very serious and traumatic event. But I don't believe that saying that that is worse than what my client suffered here would be an appropriate view of the facts. In this case, Your Honor, the testimony was clear that she suffered nightmares, that she attempted suicide, that she was, as Your Honor indicated, treating with a psychiatrist. Another case for reference would be Zeno v. Pine Plain Central School District. That was not a sexual assault case, but it was a racial discrimination case where there was approximately three years of racial harassment to an African-American student. In that case, there was no physical contact, no physical violence. There was no testimony of any attempted suicide. And so in that case, the circuit found that $1 million in compensatory damages back in 2012 was appropriate. I would submit that the circumstances here go well above that, not just because of— Remind me what that is in 2025 dollars. I believe roughly $1.5 million, I believe, Your Honor. How much? I'm sorry. I couldn't— I believe it's about $1.5 million, Your Honor. Another case would be Turley v. ISG Lackawanna. That's a 2014 case where, again, not sexual harassment, but racial harassment. And that was over a period of several years where the circuit found $1.32 million in emotional damages was appropriate. In that case, again, there was no attempted suicide. There was no testimony of that kind of, I would submit, more significant actualization of the emotional distress. Much has been made about whether or not there's been medical testimony, the fact that there was PTSD or not. I think that's more a symptom of the fact that she attempted the suicide, and the fact that she testified to having attempted suicide speaks to what level of distress she was under. Whether it was for PTSD, depression, or any other thing is really irrelevant. It's the fact that she drew the conclusion that, based on what she was going through, her life may not have been worth living, and she was willing to take steps towards that. And the fact that the jury credited that, I think, speaks to the significant and extreme emotional distress. Another case, Your Honor, would be Ortiz v. New York City Housing Authority. In that case, there was a rape on a single day. I really don't want to be in the business of comparing gradations of rape and attempted rape. I think anyone in that situation— What was the award in that case? That was $3 million, and that was back in 1998, Your Honor. And what's that? Again, I'm sorry to—I don't have inflation calculators in front of me, but what would that roughly be in today's dollars? I believe that's about $5 million, Your Honor. The precise numbers are in the brief, but I believe that's— Just as a quick reminder. So with respect to the compensatory damages, Your Honor, I believe that there are plenty of examples where people who have experienced a single instance of sexual assault that is violent, you know, whether it goes to completion or not, I think is irrelevant. I think being in that moment, and if Your Honors look back at the trial transcript— Whether it was a completed active—one would think that if— I apologize, Your Honor. —the defendant here had completed the rape, you presumably would have been asking for even higher damages, I would think. Again, not to— My apologies, Your Honor. I certainly don't disagree with you when I misspoke in saying irrelevant. But what I would say is her description to the jury of how she felt in that moment, the fact that she was seized by her body while the attempted rape was occurring, as well as what she did to try and compose herself after the fact, which was corroborated by one of the testifying witnesses, I think speaks to how traumatic and long-lasting that experience was. Now, there was not argument with respect to the punitive damages award, but I would point out that that was not raised at the district court. Even if it had been, we submit, in the scope of the compensatory damages, it was certainly well within the one-to-one and sometimes even higher ratios that this court has found. Just touching on the other points raised by appellant, as Your Honor referenced, the e-mails were unauthenticated, and we believe that admitting them would have actually been a prejudicial mistake. But the fact that they were given an opportunity to address them, the substance at least, certainly could cure any sort of issue there. And then with respect to the attorney's fees and costs, we would point out that, based on appellant's arguments about the fact that the damages here are significantly higher, cut completely against the degree of success, which is one of the main factors in determining the reasonableness of that. The last thing I would point out is there was a brief argument in appellant's papers about the fact that there were litigation-related damages. Yet in appellant's reply on page 8, they try and distinguish these facts from the case of Ortiz that I referenced, because in Ortiz there was testimony about the medical condition of the plaintiff in that case passing out in the middle of trial. You're referring to the jury instruction that they challenged, that the court didn't give a jury instruction that in calculating compensatory damages, they should not consider any emotional damages as a result of having to testify at trial. Is that the issue that you're talking about?  But they didn't request an instruction, correct? Correct, Your Honor. And so I just wanted to touch on it, because I don't believe that there was an error there as well. Okay. Thank you. I think we have your argument. Why don't we hear from Mr. Bacon? You have reserved two minutes. Before you go into anything, I hope one thing maybe you could touch on briefly is the question that your opponent raised in the briefs about whether any challenge to the punitive damages award was forfeited or waived on your part. And I know that you addressed it in your reply brief. But let me just give it to the jurors. We maintain the issue of waiver is irrelevant because it's a question of law. And it's the appropriate damage standard is a question of law for the court. Do you agree that you did not raise it adequately before the district court? And you're relying, I take it that you're relying purely on the idea that even if a party forfeits it, when it's an issue of law, you can still raise it? Yes.  Okay. So as quickly as I can, first of all, the contact at issue in our case, the plaintiff testified, lasted for one minute. She also tried to testify that she had The contact lasted for one minute? The physical contact. What about her testimony that at least every two weeks she was groped by him? That was not contact the jury could consider? The jury can and did consider it, yes. But getting to the You're saying the attempted rape didn't last long?  Yes. It was a very brief episode. It was a very brief attempted rape. Yes. Well, as compared to the cases involving many instances of multiple rape that counsel cited. So all the cases that counsel cited involved cases involving rape and often multiple rape. Every case involves a clinical testimony of some sort. The Carroll case, the Doe case, the Noonan case, the Breest case, the Ortiz case, the Orozco-Herdos case, the Egan case. You're just saying that you're not trying to minimize what happened here, but you're saying it could be worse, that the higher dollar amount awards have gone to the cases that are even worse than this case. Even worse from a factual standpoint, from a reprehensibility standpoint, which also goes to punitive damage, and from a medical evidence standpoint. In Carroll, there So your point is there was no clinical testimony here. There was in the other cases. So what is the consequence of that? There should be a new trial, and they should put on some psychiatry or what? Well, there should be a remittitor. And if the plaintiff doesn't accept the remittitor, there should be a What should the amount of the remittitor be? I think the compensatory should be remitted to $250,000, which is in the upper range of significant cases. And the punitive should be reduced to $250,000, which Is that because you're – well, not you. You weren't the trial lawyer. Thank you. Because the trial lawyer made a strategic decision that it was best not to compel medical records or seek to introduce them and rely on, hey, she doesn't have any clinical evidence or medical records. And that didn't work with the jury. So now you want a do-over because of that strategic decision? I don't know if that was a – honestly, if that was a strategic decision. That was an outcome. I don't know if that was actually the thought. Well, the reason I ask is in my questions earlier in your main argument, you said, well, it's not our place to introduce evidence of clinical evidence because we don't want to help her out. So that suggests to me that that's a strategic decision, whether you put in the clinical records or whether you just hold back and say, hey, we're going to argue she has not. If they had been produced, it would have been a strategic decision. Okay. I think we have your argument. We appreciate it. We will take the case under advisement. So thank you very much to both your sides. We have your briefing. Okay. They're very thorough, and we do appreciate you coming down today.  Appreciate it. Take the case under advisement, as I said. Thank you, Your Honor. Thank you. Thank you all.